[No. S123474. May 22, 2006.]

THE PEOPLE, Plaintiff and Respondent, v.
JAMES COREY McGEE, Defendant and Appellant.

## Counsel

John Halley, under appointment by the Supreme Court, for Defendant and Appellant.

Bill Lockyer, Attorney General, Manuel M. Medeiros, State Solicitor General, Robert R. Anderson, Chief Assistant Attorney General, Gerald A. Engler, Assistant Attorney General, Seth K. Schalit, Stan Helfman, John H. Deist, George F. Hindall III and Jeffrey M. Laurence, Deputy Attorneys General, for Plaintiff and Respondent.

## Opinion

**GEORGE, C. J.**—Numerous California statutes subject a defendant who is convicted of a criminal offense to increased punishment if he or she previously was convicted of another offense. In determining whether a defendant is subject to increased punishment on the basis of a prior conviction, it sometimes is necessary to examine the record of the earlier proceeding to determine whether it involves the type of qualifying prior conviction that authorizes increased punishment under the applicable sentencing statute. In view of the unusual and somewhat specialized nature of the inquiry that must be conducted for this purpose—an examination that is strictly limited to a review and interpretation of documents that are part of the record of the prior criminal proceeding—our decisions establish that under California law it is *the court*, rather than *the jury*, that is entrusted with the responsibility of undertaking this inquiry and making the determination. (See, e.g., *People v. Wiley* (1995) 9 Cal.4th 580, 586–592 [38 Cal.Rptr.2d 347, 889 P.2d 541] (*Wiley*); *People v. Kelii* (1999) 21 Cal.4th 452, 455–459 [87 Cal.Rptr.2d 674, 981 P.2d 518] (*Kelii*); *People v. Epps* (2001) 25 Cal.4th 19, 23–28 [104 Cal.Rptr.2d 572, 18 P.3d 2] (*Epps*).)

The issue presented in the case before us is whether, notwithstanding the foregoing rule established under California law, a criminal defendant has a

right under the federal Constitution to have *a jury*, rather than *the court*, examine the record of the prior criminal proceeding to determine whether the earlier conviction subjects the defendant to an increased sentence when that conviction does not itself establish on its face whether or not the conviction constitutes a qualifying prior conviction for purposes of the applicable sentencing statute. The Court of Appeal held that the federal Constitution grants a criminal defendant the right to have a jury make such a determination, interpreting the United States Supreme Court's decision in *Apprendi v. New Jersey* (2000) 530 U.S. 466 [147 L.Ed.2d 435, 120 S.Ct. 2348] (*Apprendi*) as compelling that conclusion. Although the Court of Appeal recognized that *Apprendi* involved a statute providing for increased punishment on the basis of a factual circumstance related to the *current offense* (rather than on the basis of *a prior conviction*), and further that the decision in *Apprendi*, in setting forth its holding, specifically stated that "[o]*ther than the fact of a prior conviction*, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt" (*Apprendi, supra*, 530 U.S. at p. 490, italics added), the Court of Appeal concluded that the exception in *Apprendi* relating to prior convictions is a narrow one and does not apply to the circumstances presented here. We granted review to consider the conclusion reached by the Court of Appeal.

As we shall explain, we read the United States Supreme Court's decisions that we cite and discuss as authority for our conclusion that defendant's federal constitutional right to a jury trial was not implicated in the proceedings below. Unless and until the high court directs otherwise, we shall assume that the precedents from that court and ours support a conclusion that sentencing proceedings such as those conducted below do not violate a defendant's constitutional right to a jury trial. Although we recognize the possibility that the high court may extend the scope of the *Apprendi* decision in the manner suggested by the Court of Appeal, we are reluctant, in the absence of a more definitive ruling on this point by the United States Supreme Court, to overturn the current California statutory provisions and judicial precedent that assign to the trial court the role of examining the record of a prior criminal proceeding to determine whether the ensuing conviction constitutes a qualifying prior conviction under the applicable California sentencing statute. Such a function is a task for which a judge is particularly well suited and is quite different from the type of factual inquiry—assessing the credibility of witnesses or the probative value of demonstrative evidence—ordinarily entrusted to a jury. Because of these considerations, we are not prepared to assume that the high court will interpret the federal constitutional right to a jury trial as requiring a state to assign this function to a jury.

.

Accordingly, we conclude that the trial court in the present case did not violate defendant's rights by examining the record of the robbery convictions previously sustained by defendant in Nevada and by concluding that each of these offenses constituted a conviction of a "serious felony" for purposes of the applicable California sentencing statute. Although the Court of Appeal reached a contrary conclusion, finding that the trial court's action violated defendant's right to a jury trial, the appellate court further concluded that, under the circumstances of the present case, the federal constitutional error that it believed had occurred was harmless beyond a reasonable doubt. For that reason, the court upheld the increased sentence imposed by the trial court on the basis of the prior Nevada convictions. Because we conclude that no federal constitutional error occurred, we affirm the judgment rendered by the Court of Appeal, upholding the sentence imposed by the trial court.

## I

As relevant here, the facts are briefly summarized as follows. On January 11, 2001, Aaron Kelly, Leonardo Lopez, and Matty Ibarra were sitting in a parked car in East Palo Alto. There was a knock on the window. Lopez opened the door. A man wielding a shotgun demanded money. Lopez gave him $200. Within approximately one minute, Kelly and Lopez heard a shot. Lopez saw the robber drive off in a red car.

On January 22, 2001, Lopez and Serafin Andrade were in Lopez's front yard when they heard a gunshot. Lopez recognized the robber's red car as it drove by. Within a few minutes, the red car stopped close by, and the driver fired upon Lopez and Andrade. Lopez was hit by a shotgun pellet and suffered a minor cut. Lopez and Andrade fled.

Defendant ultimately was arrested and charged with a variety of crimes and sentence enhancements in connection with the foregoing incidents.[1]

The relevant charging document further alleged that (1) defendant had been convicted of robbery in Nevada in 1988 and again in 1994, and of selling a controlled substance in California in 1989, (2) all three prior convictions were

---

[1] An amended information charged defendant with two counts of attempted murder with premeditation (Pen. Code, §§ 187, subd. (a), 664, subd. (a); unless otherwise indicated, subsequent statutory references are to the Penal Code); two counts of assault with a firearm (§ 245, subd. (a)(2)); two counts of possession of a firearm by a convicted felon (§ 12021, subd. (a)(1)); one count of unlawful possession of ammunition (§ 12316, subd. (b)(1)); one count of robbery (§§ 211, 212.5, subd. (c), 213, subd. (a)(2)); two counts of attempted robbery (§§ 211, 212.5, subd. (c); 213, subd. (b)); two counts of witness intimidation (§ 136.1, subd. (c)(1)); and two counts of discharging a firearm from a motor vehicle at another person (§ 12034, subd. (c)). The amended information also alleged several firearm-use enhancements (former § 12022.5, subd. (a)(1)) and firearm-discharge enhancements (§ 12022.53, subd. (c)).

felonies (§ 1203, subd. (e)(4)), (3) each of the Nevada robbery convictions was a serious felony (§ 667, subd. (a)) and a "strike" under California's "Three Strikes" law (§ 1170.12), and (4) the 1994 Nevada robbery conviction resulted in a prior prison term (§ 667.5, subd. (b)).

Defendant moved to bifurcate trial of the charged offenses from the trial of the prior conviction allegations.

A jury found defendant not guilty of attempted murder, but convicted him of the remaining charges.

Defendant requested a jury trial on the prior conviction allegations. The parties agreed that the elements of robbery under Nevada law differed in two respects from the elements of that offense under California law. First, under Nevada law, robbery requires only *general* criminal intent (*Litteral v. State* (1981) 97 Nev. 503 [634 P.2d 1226, 1227–1229], disapproved on another point in *Talancon v. State* (1986) 102 Nev. 294 [721 P.2d 764, 769]), whereas under California law, robbery requires a *specific* criminal intent to permanently deprive another person of property (see, e.g., *People v. Avery* (2002) 27 Cal.4th 49, 52 [115 Cal.Rptr.2d 403, 38 P.3d 1]). Second, under Nevada law, a taking accomplished by fear of *future* injury to the person or property of *anyone in the company of the victim at the time of the offense* qualifies as robbery (Nev. Rev. Stat., § 200.380), whereas under California law such a taking does not (§ 212).[2]

In view of the foregoing distinctions between the elements of robbery under California law and those under Nevada law, it was at least theoretically possible that defendant's Nevada convictions involved conduct that would not constitute robbery under California law. Thus the parties agreed that inquiry into the record of the Nevada convictions was required in order to determine whether each constituted a qualifying felony for purposes of the relevant California sentencing statutes. (See §§ 667, subd. (a)(1), 667.5, subd. (c)(9), 1170.12, subd. (b)(2), 1192.7, subd. (c)(19); *People v. Avery, supra,* 27 Cal.4th at p. 53; *People v. Hazelton* (1996) 14 Cal.4th 101, 109 [58 Cal.Rptr.2d 443, 926 P.2d 423].)

Defendant contended he had a federal constitutional right to have the jury make this determination. The trial court rejected defendant's position, reserving to itself the question of the legal sufficiency of defendant's Nevada

---

[2] Under the California robbery statute, when the prosecution seeks to establish the "fear" element of robbery by reference to the fear sustained by a person who was in the company of the victim at the time of the robbery (other than a relative of the victim), the fear must be "of an *immediate* and unlawful injury to the person or property" of the other person, as contrasted with Nevada's provision encompassing fear of *future* injury to the other person or his or her property. (§ 212, par. 2, italics added.)

robbery convictions and ruling that it would determine whether defendant was the person convicted in the Nevada cases and whether the Nevada convictions qualified as strikes under California law.

With regard to the 1988 Nevada case, the prosecution introduced various documents, including the transcript of the preliminary hearing in that proceeding. This transcript included the testimony of the victim, Delmar D. Foust, reflecting that while waiting with his brother and two friends at a Reno bus station near midnight, he encountered defendant, who "threatened us and he [defendant] took my money." Asked what other actions defendant took, Foust testified he observed defendant "slapping another guy and saying that's what will happen if anybody tells on him." Defendant demanded money from Foust, who gave him $2. Asked why he gave defendant the money, Foust testified: "Because I was afraid of being beat up." At the hearing at which he entered his plea of guilty, defendant admitted having committed the robbery.[3]

With regard to the 1994 Nevada case, the prosecution introduced various documents, including the transcript of the preliminary hearing in that proceeding. This transcript included the testimony of the victim, Ian T. Baker, who described defendant asking him for money. Baker offered defendant some change. Defendant, who was accompanied by another individual, replied, "No, we want money." Baker refused to further comply. Defendant then struck him, causing him to fall. Baker then gave defendant his wallet, and defendant took $120 from it, as well as Baker's portable tape player. The transcript of the proceedings reflects that defendant was asked in open court whether he took personal property from Baker against Baker's will, and that defendant admitted having done so; in a written plea form, defendant acknowledged "willfully and unlawfully [having taken] personal property . . . from the person of Ian T. Baker . . . against his will and by means of force or violence."

---

[3] The transcript of these proceedings includes the following colloquy (italics added):

"The court: 'The elements of the offense are as follows: [t]hat you did on or about January 15, 1988, within Washoe County, Nevada, willfully and unlawfully take personal property, that being money, from the person of Delmar Foust, at the City Fare Bus transfer area in Washoe County, Nevada; that you did this against his will, and by means of fear or immediate or future injury to his person. Do you understand that that is the charge against you?'

"Defendant: 'Yes.'

"The court: 'Is that in fact what you did?'

"Defendant: 'Yes.'

"The court: 'Did you force Mr. Foust to give you money?'

"Defendant: 'Yes.'

"The court: 'Did you do that by means of fear of immediate or future injury to him? *Did you make him afraid of what would happen if he did not give you money?*'

"Defendant: 'Yes.' "

After examining the record of the Nevada judicial proceedings, the trial court determined that defendant was the person convicted in each of the Nevada cases and that each of the Nevada convictions satisfied the elements of robbery under California law.

The trial court thereafter submitted to the jury the narrow question whether defendant was, in fact, the person who had suffered the prior convictions. The jury found the prior conviction allegations true.

The trial court subsequently considered the Nevada robbery convictions as serious felonies or "strikes" in sentencing defendant to a prison term of 90 years to life.

On appeal, defendant reiterated his contention that he had a federal constitutional right to have a jury, rather than the trial court, determine whether each of his Nevada robbery convictions constituted a qualifying serious felony conviction for purposes of California's Three Strikes law. Defendant did not dispute that the threshold comparison of the foreign jurisdiction's law with California law is a question for the judge, but contended that when, as here, the elements of the foreign law differ from the elements of the California law so that the determination whether the foreign conviction constitutes a qualifying conviction for purposes of the relevant California sentencing statute cannot be made on the basis of the face of the foreign conviction itself, a defendant has the constitutional right to have a jury, rather than the court, examine the record of the criminal proceedings of the foreign conviction to determine whether that conviction constitutes a qualifying conviction for purposes of California law.

The People challenged defendant's framing of the issue as one involving a *finding of fact* that plausibly could be brought within *Apprendi*'s reach, instead contending that the question presented by this case is whether the *nature of a prior conviction is demonstrated by an examination of the documentary record of the conviction*, a task more appropriately suited for a judge.

The Court of Appeal agreed with defendant's contention, concluding that the United States Supreme Court's decision in *Apprendi* supported defendant's position regarding the scope of the right to a jury trial under the federal Constitution. The Court of Appeal's conclusion reflected a view of *Apprendi* different from that set forth by another Court of Appeal in the earlier decision in *People v. Thomas* (2001) 91 Cal.App.4th 212, 222–223 [110 Cal.Rptr.2d 571] (*Thomas*) (rejecting the defendant's argument that *Apprendi* conferred upon him the right to have a jury determine the truth of prior-prison-term allegations, and instead interpreting *Apprendi* narrowly to conclude that a

defendant has no federal constitutional right to a jury trial on factual issues related to recidivism). The Court of Appeal in the present case further determined, however, that the constitutional error in question was subject to harmless error review under the standard set forth in *Chapman v. California* (1967) 386 U.S. 18 [17 L.Ed.2d 705, 87 S.Ct. 824], and that, in light of the facts reflected in the record of defendant's 1988 and 1984 Nevada robbery convictions, the denial of a jury trial with respect to such convictions was harmless beyond a reasonable doubt.

Both parties sought review of the Court of Appeal's decision. We granted the People's petition to consider whether the appellate court properly concluded that, under circumstances such as those existing in the present case, the federal Constitution precludes California from having a judge, rather than a jury, examine the record of a prior criminal conviction to determine whether that conviction constitutes a qualifying prior conviction that subjects the defendant to increased punishment under one of California's applicable sentencing statutes.

## II

■ "To qualify as a serious felony, a conviction from another jurisdiction must involve conduct that would qualify as a serious felony in California." (*People v. Avery, supra*, 27 Cal.4th 49, 53; see also §§ 667, subd. (d)(2), 1170.12, subd. (b)(2).) As we previously have emphasized, however, "[b]ecause the nature of the *conviction* is at issue, the prosecution is not allowed to go outside the record of conviction to 'relitigat[e] the circumstances of a crime committed years ago . . . .' " (*People v. Woodell* (1998) 17 Cal.4th 448, 459 [71 Cal.Rptr.2d 241, 950 P.2d 85], quoting *People v. Guerrero* (1988) 44 Cal.3d 343, 355 [243 Cal.Rptr. 688, 748 P.2d 1150].) Instead, the relevant inquiry in deciding whether a particular prior conviction qualifies as a serious felony for California sentencing purposes is limited to an examination of the record of the prior criminal proceeding to determine the nature or basis of the crime of which the defendant was convicted. (*People v. Woodell, supra*, 17 Cal.4th at pp. 454–461; *People v. Myers* (1993) 5 Cal.4th 1193, 1198–1201 [22 Cal.Rptr.2d 911, 858 P.2d 301]; see also *People v. Guerrero, supra*, 44 Cal.3d at p. 355 ["To allow the trier of fact to look to the entire record of the conviction is certainly reasonable: it promotes the efficient administration of justice and, specifically, furthers the evident intent of the people in establishing an enhancement . . . that refers to *conduct*, not a specific *crime*. To allow the trier [of fact] to look to the record of the conviction—*but no further*—is

also fair: it effectively bars the prosecution from relitigating the circumstances of a crime committed years ago and thereby threatening the defendant with harm akin to double jeopardy and denial of speedy trial."].)[4]

The question presented here is whether the Court of Appeal properly concluded the federal Constitution affords a defendant a right to have a jury, rather than the court, examine the record of a prior criminal proceeding to determine whether a conviction constitutes a qualifying serious felony conviction within the meaning of the relevant California sentencing statute.

In their briefing in this court, the People contend that a criminal defendant has no federal constitutional right to a jury trial on factual circumstances and conduct underlying a prior conviction used to enhance punishment. In support of their position, the People argue that the Court of Appeal misconstrued the high court's decision in *Apprendi.* Specifically, the People assert: "The fundamental distinction *Apprendi* draws is between sentence enhancements based on facts related to the commission of the *current* offense, such as the hate-crime enhancement at issue in that case, as to which a defendant has a federal constitutional right to a jury trial, and sentence enhancements based on *facts related to defendant's recidivism,* such as those at issue in the instant case, as to which a defendant has no such right." Echoing the position of the Court of Appeal, defendant contends in response that he has a "Sixth Amendment right to a jury determination on whether his Nevada conduct amounted to a serious felony."

In order to better understand the parties' respective positions, we first review the relevant California judicial decisions and statutory provisions that preceded *Apprendi* and remain pertinent here, and then consider whether *Apprendi* mandates a revision of the governing California law.

A. Wiley

In *Wiley, supra,* 9 Cal.4th 580, 585, the statutory enhancement provision at issue imposed an additional five-year term of imprisonment for each prior serious felony conviction sustained by the defendant "on charges brought and tried separately" (§ 667, subd. (a)(1)), and the question before the court was whether, under the relevant statutory and constitutional provisions, the determination whether the defendant's prior convictions had been "brought and tried separately" was to be made by the jury or by the court. In addressing

---

[4] In *People v. Guerrero, supra,* 44 Cal.3d 343, we were "not called on to resolve such questions as what items in the record of conviction are admissible . . ." and therefore declined to address the issue. (*Id.* at p. 356, fn. 1.) Nor is that issue presented here; as is typically the case, the record of defendant's prior robbery convictions does not contain conflicting documentary proof.

that issue, we turned first to the relevant statutory provisions, sections 1025 and 1158, observing: "Section 1025 provides that if a defendant denies having suffered an alleged prior conviction, 'the question whether or not he has suffered such previous conviction must be tried by the jury which tries the issue upon the plea of not guilty . . . .' Similarly, section 1158 states that if a defendant is found guilty of an offense charged in an accusatory pleading that also alleges that the defendant suffered a prior conviction, 'the jury, or the judge if a jury trial is waived, must . . . find whether or not he has suffered such previous conviction.' By their terms, sections 1025 and 1158 grant a defendant the right to have the jury determine only whether he or she 'suffered' the alleged prior conviction, and not whether multiple prior convictions were separately brought and tried." (*Wiley, supra,* at p. 589.)

In *Wiley,* we went on to conclude that the "question whether the charges leading to these two prior convictions had been 'brought and tried separately' within the meaning of section 667(a)(1) properly was a matter for the court, because that question is largely legal in nature. . . . Although there are, of course, some underlying 'facts' that are relevant to the determination as to whether charges have been 'brought and tried separately,' such as the filing of charges either in a single complaint or multiple complaints, *such facts generally are readily ascertainable upon an examination of court documents. This is the type of inquiry traditionally performed by judges as part of the sentencing function.*" (*Wiley, supra,* 9 Cal.4th 580, 590, italics added.)

## B. Kelii

In *Kelii, supra,* 21 Cal.4th 452, we considered whether the court or the jury was the appropriate entity to determine whether a prior felony conviction qualified as a "serious felony" for purposes of the Three Strikes law. (§§ 667, subd. (d)(1), 1170.12, subd. (b)(1).) *Kelii* involved a defendant who was convicted by a jury of two counts of second degree burglary and two counts of grand theft. The jury subsequently found that the defendant previously had suffered three convictions of burglary and one of attempted burglary. The trial court determined that the prior convictions were of first degree or attempted first degree burglary and that they therefore were residential and qualified as serious felonies. The court sentenced the defendant to state prison for 25 years to life. On appeal, the defendant contended that the jury, not the court, should have determined whether his prior convictions qualified as serious felonies. (*Kelii, supra,* 21 Cal.4th at p. 454.)

In rejecting the defendant's position in *Kelii,* we relied heavily upon our decision in *Wiley, supra,* 9 Cal.4th 580, in holding as follows: "*Determining whether a prior conviction qualifies as a strike under the Three Strikes law is also the type of inquiry that judges traditionally perform as part of the*

*sentencing function.* Often this determination is purely legal, with no factual content whatever. The Three Strikes law defines a strike as, among other things, 'any offense defined in subdivision (c) of Section 1192.7 as a serious felony in this state.' (§§ 667, subd. (d)(1), 1170.12, subd. (b)(1).) Section 1192.7, subdivision (c), lists some felonies that are per se serious felonies, such as murder, mayhem, rape, arson, robbery, kidnapping, and carjacking. If a defendant's prior conviction falls into this group, and the elements of the offense have not changed since the time of that conviction, then the question whether that conviction qualifies as a serious felony is entirely legal.

"Sometimes the determination does have a factual content, just as the question whether convictions were brought and tried separately has a factual content. As we explained in [*People v.*] *Woodell*[, *supra*, 17 Cal.4th 448], 'Sometimes the definition of the qualifying prior conviction is not completely congruent with the definition of the crime of which the defendant has been convicted. For example, in [*People v. Guerrero*[, *supra*,] 44 Cal.3d 343 [243 Cal.Rptr. 688, 748 P.2d 1150]], the alleged prior conviction was for a " 'burglary of a residence.' " (*People v. Guerrero, supra,* 44 Cal.3d at p. 346 [quoting Pen. Code, former § 1192.7, subd. (c)(18)].) The statutory use of the phrase, "burglary of a residence," posed a problem because "there is no offense specifically so defined in the Penal Code." (*Guerrero, supra,* at p. 346.) A particular burglary conviction might or might not have involved a residence.' (*People v. Woodell, supra,* 17 Cal.4th at p. 452.)

"But these factual questions are of limited scope. In determining whether a prior conviction is serious, 'the trier of fact may look to the entire record of the conviction' but '*no further.*' (*People v. Guerrero*[, *supra*,] Cal.3d [at p.] 355, original italics.) Thus, no witnesses testify about the facts of the prior crimes. The trier of fact considers only court documents. It is true that sometimes the trier of fact must draw inferences from transcripts of testimony or other parts of the prior conviction record. (See, e.g., *People v. Reed* (1996) 13 Cal.4th 217, 220 [52 Cal.Rptr.2d 106, 914 P.2d 184].) But the factual inquiry, limited to examining court documents, is not significantly different from the one we considered in *Wiley.* '[S]uch facts generally are readily ascertainable upon an examination of court documents. This is the type of inquiry traditionally performed by judges as part of the sentencing function.' (*Wiley, supra,* 9 Cal.4th at p. 590.) Accordingly, the statutory right to have a jury decide whether the defendant 'has suffered' (§§ 1025, 1158) the prior conviction does not include the inquiry whether the conviction qualifies as a strike." (*Kelii, supra,* 21 Cal.4th at pp. 456–457, first italics added.)

In so holding, we rejected the defendant's position that an amendment to section 1025 had removed from the jury the question of his identity as the person who suffered the prior conviction while leaving all remaining factual

determinations for the jury: "The new section 1025, subdivision (b), is substantially identical to the relevant portion of the previous version of section 1025. Only subdivision (c) is new. That subdivision clearly *narrows*, rather than expands, the jury's role. It does not overrule *Wiley*'s interpretation of section 1025 or expand the jury's role beyond determining whether the defendant 'has suffered' the prior conviction. The passage of this narrowing legislation soon after we narrowly interpreted the same statute strongly suggests legislative approval of our interpretation." (*Kelii, supra,* 21 Cal.4th at p. 457.)[5]

■ In view of our decision in *Wiley*, and the Legislature's response thereto (as discussed in *Kelii*), we are convinced that there has been a clear expression of legislative intent that a jury play a very limited role in determining prior offense allegations and that a court, not a jury, examine records of prior convictions to determine whether the conviction alleged qualifies as a conviction under the applicable sentence-enhancement provision.

## C. Apprendi

One year after we filed our decision in *Kelii, supra,* 21 Cal.4th 452, the United States Supreme Court rendered its decision in *Apprendi, supra,* 530 U.S. 466. Defendant contends the Court of Appeal below correctly determined that in the wake of *Apprendi*, he was entitled to have a jury decide whether each of his Nevada robbery convictions was based upon conduct constituting robbery under California law and thus was considered a "serious felony" for the purpose of sentencing under California's Three Strikes law. The People respond that *Apprendi* did not address the question presented here, and that the high court has not extended its holding in *Apprendi* to require a state to assign to a jury, rather than to a court, the task of examining the record of a prior conviction to determine whether the conviction constitutes a qualifying conviction for the purposes of the various sentence enhancement statutes.

---

[5] Having observed that the legislative history of the amendment to section 1025 was "inconclusive," we added that "[n]othing in the legislative history suggests the Legislature desired to *expand* the jury role in questions of prior convictions or to overrule *Wiley*. To the contrary, the bill's express purpose was to reduce significantly the number of jury trials on prior conviction allegations. The final statutory language appears to have been a compromise, limiting the bill's reach to eliminate jury trials only on the issue of identity and to leave the law otherwise unchanged. The Legislature seemed to want to leave other issues, such as those of *Wiley* and this case, for judicial decision. Thus, if the former version of section 1025 did not grant a jury trial on these issues—and we conclude it did not—the current version also does not." (*Kelii, supra,* 21 Cal.4th at p. 458.)

In *Apprendi*, the high court was confronted with a state statute that classified the possession of a firearm for an unlawful purpose as a " 'second-degree' " offense, punishable by imprisonment for " 'between five years and 10 years.' " (*Apprendi*, *supra*, 530 U.S. 466, at p. 468.) A separate statute, described by the New Jersey Supreme Court as a " 'hate crime' law," provided for an " 'extended term' of imprisonment" of " 'between 10 and 20 years' " if the trial court, based upon a preponderance of the evidence, determined that " '[t]he defendant in committing the crime acted with a purpose to intimidate an individual or group of individuals because of race, color, gender, handicap, religion, sexual orientation or ethnicity.' " (*Id.* at pp. 468–469.) The question presented was "whether the Due Process Clause of the Fourteenth Amendment requires that a factual determination authorizing an increase in the maximum prison sentence for an offense from 10 to 20 years be made by a jury on the basis of proof beyond a reasonable doubt." (*Id.* at p. 469.) Significantly, *Apprendi* did not involve a prior offense enhancement.

*Apprendi* arose out of an incident in which the defendant fired several bullets into the home of an African-American family that had moved into a previously all-White neighborhood. (*Apprendi*, *supra*, 530 U.S. 466, 469.) The defendant was arrested, made a statement to the police (later retracted) that suggested a racial motivation for the incident, was charged with a number of offenses, and eventually pleaded guilty to certain offenses as part of a plea agreement. (*Id.* at pp. 469–470.) The trial court thereafter held an evidentiary hearing on the issue of the defendant's "purpose" in committing the shooting. The defense presented evidence from a psychologist and several character witnesses who testified that defendant did not have a reputation for racial bias. (*Id.* at pp. 470–471.) The defendant also testified, "explaining that the incident was an unintended consequence of overindulgence in alcohol, denying that he was in any way biased against African-Americans, and denying that his statement to the police had been accurately described." (*Id.* at p. 471.) The trial court, however, finding the police officer's testimony credible, concluded that the evidence supported a finding " 'that the crime was motivated by racial bias.' " (*Ibid.*) Having found " 'by a preponderance of the evidence' " that the defendant's actions were made " 'with a purpose to intimidate,' " as specified by the applicable state statute, the trial court concluded that the hate-crime enhancement applied. (*Ibid.*) The New Jersey appellate courts affirmed. (*Id.* at pp. 471–474.)

In reversing the judgment rendered by the New Jersey Supreme Court, the United States Supreme Court observed: "At stake in this case are constitutional protections of surpassing importance: the proscription of any deprivation of liberty without 'due process of law,' [as guaranteed by the Fourteenth Amendment], and the guarantee that '[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial

jury' [as provided by the Sixth Amendment]. Taken together, these rights indisputably entitle a criminal defendant to 'a jury determination that [he] is guilty of every element of the crime with which he is charged, beyond a reasonable doubt.' " (*Apprendi, supra*, 530 U.S. 466, 476–477, fn. omitted.) Notably, the high court's framing of the issue in *Apprendi* was confined to the elements of the *charged offense*—not, as here, to the adjudication of aspects of the defendant's criminal *past*.

Reviewing "[t]he historic link between verdict and judgment and the consistent limitation on judges' discretion to operate within the limits of the legal penalties provided," the court in *Apprendi* noted "the novelty of a legislative scheme that removes the jury from the determination of a fact that, if found, exposes the criminal defendant to a penalty exceeding the maximum he would receive if punished according to the facts *reflected in the jury verdict* alone." (*Apprendi, supra*, 530 U.S. 466, 482–483, original italics omitted, italics added, fn. omitted.) Here again, the high court's focus on the jury's verdict indicates quite clearly that the court was addressing itself to issues that pertained to the charged offense, not to issues involving the defendant's *previously adjudicated criminal conduct*.

The court in *Apprendi* continued: "We do not suggest that trial practices cannot change in the course of centuries and still remain true to the principles that emerged from the Framers' fears 'that the jury right could be lost not only by gross denial, but by erosion.' [Citation.] But practice must at least adhere to the basic principles undergirding the requirements of trying to a jury all facts necessary to constitute a statutory offense, and proving those facts beyond reasonable doubt. As we made clear in [*In re*] *Winship* [(1970) 397 U.S. 358, 363 [25 L.Ed.2d 368, 90 S.Ct. 1068]], the 'reasonable doubt' requirement 'has [a] vital role in our criminal procedure for cogent reasons.' [Citation.] Prosecution subjects the criminal defendant both to 'the possibility that he may lose his liberty upon conviction and . . . the certainty that he would be stigmatized by the conviction.' [Citation.] We thus require this, among other, procedural protections in order to 'provid[e] concrete substance for the presumption of innocence,' and to reduce the risk of imposing such deprivations erroneously. [Citation.] If a defendant faces punishment beyond that provided by statute *when an offense is committed under certain circumstances but not others*, it is obvious that both the loss of liberty and the stigma attaching to the offense are heightened; it necessarily follows that the defendant should not—at the moment the State is put to proof of those circumstances—be deprived of protections that have, until that point, unquestionably attached." (*Apprendi, supra*, 530 U.S. 466, 483–484, italics added, fn. omitted.)

In a passage that bears directly upon the case before us, the court in *Apprendi* summarized its decision in *Almendarez-Torres v. United States*

(1998) 523 U.S. 224 [140 L.Ed.2d 350, 118 S.Ct. 1219] (*Almendarez-Torres*). In *Almendarez-Torres*, the court considered a federal grand jury indictment that charged the petitioner with having been found in the United States after having been deported, in violation of 8 United States Code, section 1326(a); the offense carried a maximum sentence of two years' imprisonment. (*Apprendi, supra*, 530 U.S. 466, 487.) The petitioner pleaded guilty to the indictment, admitting that his " 'earlier deportation had taken place "pursuant to" three earlier "convictions" for aggravated felonies.' " (*Ibid.*) The prosecution thereafter filed a presentence report "indicating that Almendarez-Torres' offense fell within the bounds of § 1326(b) because, as specified in that provision, his original deportation had been subsequent to an aggravated felony conviction; accordingly, Almendarez-Torres could be subject to a sentence of up to 20 years." (*Ibid.*) The petitioner objected. In rejecting that objection, the high court observed: "Because Almendarez-Torres had admitted the three earlier convictions for aggravated felonies—all of which had been entered pursuant to proceedings with substantial procedural safeguards of their own—no question concerning the right to a jury trial or the standard of proof that would apply to a contested issue of fact was before the Court. . . . More important, . . . our conclusion in *Almendarez-Torres* turned heavily upon the fact that the additional sentence to which the defendant was subject was 'the prior commission of a serious crime.' " (*Id.* at p. 488, italics omitted.)[6]

■ The high court in *Apprendi* summarized the rationale upon which it had relied in *Almendarez-Torres*, making clear that it was the defendant's recidivist conduct in that case that distinguished it from *Apprendi*. The court further explained in *Apprendi* that recidivism was distinguishable from other matters employed to enhance punishment, because (1) recidivism traditionally has been used by sentencing courts to increase the length of an offender's sentence, (2) recidivism does not relate to the commission of the charged offense, and (3) prior convictions result from proceedings that include substantial protections. (*Apprendi, supra*, 530 U.S. 466, 487–488, citing *Jones v. United States* (1999) 526 U.S. 227 [143 L.Ed.2d 311, 119 S.Ct. 1215] and *Almendarez-Torres, supra*, 523 U.S. 224; see also *Monge v. California* (1998) 524 U.S. 721, 728 [141 L.Ed.2d 615, 118 S.Ct. 2246] [the question whether the defendant's prior conviction for assault with a deadly weapon involved personal use was a sentencing determination that fell within the *Almendarez-Torres* exception for recidivist behavior and therefore was not

---

[6] Like the petitioner in *Almendarez-Torres*, defendant here admitted his involvement in the Nevada crimes pursuant to plea agreements entered into shortly after he committed those offenses. The pleas were entered "pursuant to proceedings with substantial procedural safeguards of their own." (*Apprendi, supra*, 530 U.S. 466, 488.) Furthermore, as was the case in *Almendarez-Torres*, the additional sentence challenged by defendant in the present case stems directly from " 'the *prior* commission of . . . serious crime[s],' " not from the commission of his current offense. (*Ibid.*)

subject to double jeopardy protections]; *People v. Seel* (2004) 34 Cal.4th 535, 548 [21 Cal.Rptr.3d 179, 100 P.3d 870] ["The high court has made clear that recidivism is different for constitutional purposes."].)

Furthermore, although the court in *Apprendi* acknowledged that the decision in *Almendarez-Torres* could be viewed as inconsistent with the logic of the court's broad reasoning in *Apprendi*, the court in the latter case explicitly declined to overrule its decision in *Almendarez-Torres*, instead preserving "the case as a narrow exception" to the general rule that " 'any fact (other than prior conviction) that increases the maximum penalty for a crime must be charged in an indictment, submitted to a jury, and proven beyond a reasonable doubt.' " (*Apprendi, supra,* 530 U.S. 466, 476, 490.)

Accordingly, although the decision in *Apprendi* noted that tension existed between the rationale of its decision and the established rule permitting a court, rather than a jury, to determine sentence enhancements that are based upon a defendant's prior convictions, the high court in that decision did not purport to overrule the prior case law pertaining to recidivist sentencing provisions.[7]

### D. Epps

Shortly after the high court filed its decision in *Apprendi, supra,* 530 U.S. 466, this court had an opportunity to consider the implications of that decision. In *Epps, supra,* 25 Cal.4th 19, an information charged the defendant with various criminal offenses and alleged a prior serious felony conviction for sentence enhancement purposes and the Three Strikes law. The trial court bifurcated the trial of the prior conviction allegations from the trial of the substantive offenses. After the jury found the defendant guilty on all counts, the trial court dismissed the jury over the defendant's objection and held a bench trial on the prior conviction allegations, finding those allegations true. (*Epps,* at p. 22.) The defendant appealed, arguing that section 1025 entitled him to a jury trial on the prior conviction allegations. The Court of Appeal agreed with the defendant and reversed the judgment and remanded.

We granted the Attorney General's petition for review to consider whether the 1997 amendment to section 1025, which prescribed that " 'the question of

---

[7] More recently, in *Blakely v. Washington* (2004) 542 U.S. 296 [159 L.Ed.2d 403, 124 S.Ct. 2531], and *United States v. Booker* (2005) 543 U.S. 220 [160 L.Ed.2d 621, 125 S.Ct. 738], the high court applied *Apprendi* in a variety of circumstances, but neither *Blakely* nor *Booker* specifically involved a sentencing provision that authorized an increase in punishment based solely upon a prior conviction or convictions, and neither decision purported to interpret or apply the *Almendarez-Torres* exception. Accordingly, in our view, neither *Blakely* nor *Booker* sheds any additional light on the issue before us here.

whether the defendant is the person who has suffered the prior conviction shall be tried by the court without a jury[,]' " in effect "eliminated the right to a jury trial of prior conviction allegations, and if not, whether the erroneous denial of a jury trial in this context is subject to harmless error analysis on appeal." (*Epps, supra,* 25 Cal.4th 19, 25.)

Relying upon our decisions in *Wiley, supra,* 9 Cal.4th 580, and *Kelii, supra,* 21 Cal.4th 452, we held in *Epps, supra,* 25 Cal.4th 19, 21 that "the amendment did not completely eliminate the right to a jury trial, but it considerably narrowed the issues that the jury must decide" to "the question of authenticity, accuracy, or sufficiency of prior conviction records" (*id.* at p. 27), and that the "denial of this very limited right to a jury trial is subject to harmless error analysis." (*Id.* at p 21.)

In responding to an argument raised by an amicus curiae in *Epps* that "*Apprendi* gives defendants a right to have a jury decide whether a prior conviction is a serious felony for purposes of the [T]hree [S]trikes law," we observed: "*Apprendi* . . . reaffirms that defendants have no right to a jury trial of 'the fact of a prior conviction' [citation], and here, at least, only the bare fact of the prior conviction was at issue . . . . We do not now decide how *Apprendi* would apply were we faced with a situation like that at issue in *Kelii*, where some fact needed to be proved regarding the circumstances of the prior conviction—such as whether a prior burglary was residential—in order to establish that the conviction is a serious felony." (*Epps, supra,* 25 Cal.4th at p. 28.)

### E. *Decisions of the California Courts of Appeal*

In the period since the high court handed down its decision in *Apprendi*, a number of decisions rendered by our intermediate appellate courts have addressed, in a variety of contexts, the claim that a defendant who faces a potential increase in sentence on the basis of a prior conviction is entitled, in light of *Apprendi*, to have a jury rather than the court decide one or more issues related to the prior conviction. As we shall explain, these earlier Court of Appeal decisions followed an approach to *Apprendi* somewhat different from that taken by the Court of Appeal in the present case.

In *Thomas, supra,* 91 Cal.App.4th 212, the defendant faced an increased sentence under section 667.5 based on allegations that he had served two prior prison terms. At trial, defense counsel purported to waive the defendant's right to a jury trial on the prior-prison-term allegations, but the defendant did not personally waive a jury trial on those allegations. The trial court found that the defendant had served two prior prison terms and imposed an increased sentence on the basis of those enhancements. After the defendant

was sentenced, the United States Supreme Court handed down its decision in *Apprendi*, and on appeal the defendant in *Thomas* argued that he was denied a jury trial on the prior-prison-term allegations, in violation of *Apprendi*, because the trial court failed to obtain his express personal waiver of that right. The defendant in *Thomas* relied upon the following language in *Apprendi*: " 'Other than the *fact of a prior conviction*, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt.' " (*Thomas, supra,* 91 Cal.App.4th at p. 216.)

The Court of Appeal in *Thomas* rejected the defendant's claim. Citing a number of authorities from other jurisdictions, that court observed: "[O]ther courts have construed *Apprendi* as requiring a jury trial except as to matters relating to 'recidivism.' Courts have not described *Apprendi* as requiring jury trials on matters other than the precise 'fact' of a prior conviction. Rather, courts have held that no jury trial right exists on matters involving the more broadly framed issue of 'recidivism.' [Citations.]" (*Thomas, supra,* 91 Cal.App.4th 212, 221.) Concurring in these decisions, the court in *Thomas* concluded that "[i]n terms of recidivism findings that enhance a sentence and are unrelated to the elements of a crime, *Almendarez-Torres* is the controlling due process authority. . . . *Apprendi* did not overrule *Almendarez-Torres*. The language . . . in *Apprendi*, '[o]ther than the fact of a prior conviction,' refers broadly to recidivism enhancements which include section 667.5 prior prison term allegations." (*Id.* at pp. 222–223.) Finally, the court in *Thomas* observed that the evidence in that case consisted of documents that demonstrated, without dispute, that the defendant on two separate occasions had been sentenced to and had completed prison terms. (*Id.* at p. 223.)

In *People v. Belmares* (2003) 106 Cal.App.4th 19 [130 Cal.Rptr.2d 400] (*Belmares*), the defendant's sentence similarly was increased under section 667.5 on the basis of two prior prison terms, and on appeal the defendant contended he had a constitutional right to a jury trial on the issue whether he was the person whose name appeared on the section 969b packet admitted into evidence to establish the allegations that he had served prior prison terms.[8] Relying upon our decision in *Epps, supra,* 25 Cal.4th 19, the Court of Appeal rejected the defendant's position, observing: " 'The right, if any, to a jury trial of prior conviction allegations derives from sections 1025 and 1158, not from the state or federal Constitution. [Citations.]' " (*Belmares, supra,* at p. 27, fns. omitted.) The Court of Appeal further observed that "[c]ase law sets out the procedure *for the court to find* and instruct on [the issue] of identity . . . ." (*Id.* at p. 28, italics added.) In light of these state law

---

[8] Section 969b permits the prosecution to prove that a defendant served a prior prison term by introducing into evidence a packet of certified prison records.

mandates, the Court of Appeal concluded that the defendant had no constitutional right to a jury trial on the question of his identity as the person identified in the section 969b packet. (*Belmares*, at p. 28; see also *People v. Garcia* (2003) 107 Cal.App.4th 1159 [132 Cal.Rptr.2d 694] (*Garcia*) [same].)

Although acknowledging the foregoing appellate court decisions, the Court of Appeal in the present case disagreed with their broad interpretation of the *Almendarez-Torres* exception as encompassing all questions relating to recidivism, and instead suggested that the exception should be interpreted narrowly: "[W]e conclude that the *Almendarez-Torres* exception to *Apprendi* is confined to determinations about the past legal consequences of a defendant's conduct, such as whether his conduct has given rise to a conviction or prison term, and does not extend to determinations about the conduct itself, such as the intent with which a defendant acted." Reasoning that the question whether defendant was subject to an increased sentence on the basis of the prior Nevada robbery convictions required a factual finding as to whether his conduct at the time he committed the prior offense satisfied the elements of the California robbery statute, the Court of Appeal concluded that this was the type of factual issue on which defendant had a right to a jury trial under *Apprendi*. In so holding, the Court of Appeal distinguished *Thomas*, *Belmares*, and *Garcia* as involving only "factual issues related to the legal consequences [a recidivist] had suffered as a result of past criminal conduct, not whether that conduct was criminal in the first place."

As we shall explain in the discussion that follows, we believe the Court of Appeal erred in framing the issue as one calling for a finding of fact regarding *defendant's conduct* at the time he committed the prior offense. Instead, we believe it is more accurate to characterize the inquiry that is required under California law as a legal determination of the nature of defendant's *prior convictions* as established by the record of the prior criminal proceedings.

### F. *The Appropriate Inquiries to Be Made*

As the foregoing discussion suggests, resolution of the issue presented in this case involves two related inquiries: (1) the breadth or scope of the so-called *Almendarez-Torres* exception applicable to an increase in sentence based upon a defendant's recidivism, and (2) the specific nature of the inquiry that is required to be made under California law in this matter. We address each of these inquiries in turn.

#### 1. *The Scope of the Exception: Other Jurisdictions*

With regard to the first inquiry—the scope of the *Almendarez-Torres* exception—we note that, as the *Thomas* decision recognized, numerous

out-of-state decisions have interpreted the *Almendarez-Torres* exception more broadly than did the Court of Appeal in the present case.

In *State v. Dixon* (2001) 346 N.J. Super. 126 [787 A.2d 211], for example, the court held there is no right to a jury trial where "[t]he required *fact-finding does not relate to the present offense* or its elements." (*Id.* at p. 221, italics added.) In that case, after a jury convicted the defendant of various charges, the trial court sentenced him under a repeat offender statute. The court rejected the defendant's argument that he had a right to have a jury determine the existence of the factors that increased his sentence. "In short, we read *Apprendi* as leaving to the judge, consistent with due process, the task of finding not only the mere fact of previous convictions *but other related issues as well*. Judges frequently *must make factual determinations for sentencing*, so it is hardly anomalous to require that they also determine the 'who, what, when and where' of a prior conviction. [Citation.]" (*Ibid.*, italics added.)

In *Wright v. State* (Fla.Dist.Ct.App. 2001) 780 So.2d 216, the defendant asserted that a statute permitting the trial court to determine the fact of his prior conviction and whether the conviction was "for a qualified offense committed within five years" was unconstitutional. The court disagreed and held that even in the wake of *Apprendi*, the defendant had no right to have a jury decide these issues.

In *People v. Hill* (2003) 345 Ill.App.3d 620 [280 Ill.Dec. 908, 803 N.E.2d 138], the court considered whether the state's mandatory recidivist sentencing provision was unconstitutional under *Apprendi*. The court held that there is no right to a jury trial on facts relating to recidivism, including "the fact of the timing, degree, number and sequence of the defendant's prior convictions," or on his age for purpose of enhancement under the recidivist sentencing statute. (*Id.* at p. 150.) The court also relied upon its previous decision in *People v. Lathon* (2000) 317 Ill.App.3d 573 [251 Ill.Dec. 296, 740 N.E.2d 377], noting that decision's extensive review of *Apprendi* and *Almendarez-Torres*: "*Lathon* looked at *Apprendi*'s review of *Almendarez-Torres* and determined that the *Apprendi* Court not only endorsed the recidivism exception, but articulated reasons for such an exception, including the fact that procedural safeguards enhance the validity of any prior conviction, recidivism is not an essential element of the underlying criminal offense[,] and recidivism does not relate to the commission of the underlying offense." (*Hill*, at p. 150.)

In *State v. Stewart* (2002) 368 Md. 26 [791 A.2d 143], the defendant was convicted of possession and distribution of crack cocaine and was sentenced to 10 years in prison after the trial court determined that he had served a prior prison term. (*Id.* at p. 144.) The defendant argued that he had a right to a jury

trial on the prior-prison-term issue and to have the prosecution prove that matter beyond a reasonable doubt. (*Ibid.*) The Maryland Court of Appeals disagreed: "In light of the language in *Apprendi* suggesting that sentencing courts traditionally consider matters related to recidivism, [citation], courts have found that the *Almendarez-Torres* exception to the right to a jury trial is not limited solely to prior convictions." (*Id.* at p. 151.) The court further observed in *Stewart*: "[T]he *Almendarez-Torres* exception covers questions related to recidivism, not merely the fact of prior conviction. Appellee's previous term of incarceration, like prior convictions arising from crimes committed on separate occasions [citation], *or the aggravated nature of a prior conviction* [citation], is a fact related to recidivism, and, as stated above, recidivism is a question that traditionally has been reserved for the sentencing court." (*Id.* at p. 152, italics added.) Thus, the defendant in the *Stewart* case had no right to a jury trial on the issue of the length of his confinement upon a prior conviction, for the purpose of sentence enhancement under the subsequent offender statute.

Finally, in *People v. Rosen* (2001) 96 N.Y.2d 329, 335 [728 N.Y.S.2d 407, 752 N.E.2d 844], the New York Court of Appeals held the "[d]efendant had no constitutional right to a jury trial to establish the facts of his prior felony convictions" (citing *Apprendi, supra,* 530 U.S., at p. 488), including matters " 'pertaining to the defendant's history and character and the nature and circumstances of his criminal conduct.' " (*Rosen,* at p. 335.)

■ Similarly, a number of federal lower court decisions have reaffirmed the vitality of judicial factfinding with regard to a defendant's prior convictions. As summarized below, the decisions of these courts have opined that the *Almendarez-Torres* exception is not limited simply to the bare *fact* of a defendant's prior conviction, but extends as well to the *nature* of that conviction, thereby permitting sentencing courts to determine whether the prior conviction is the type of conviction (for example, a conviction of a "violent" felony) that renders the defendant subject to an enhanced sentence.

One such decision is *Chamberlain v. Pliler* (C.D.Cal. 2004) 307 F.Supp.2d 1128. In that case, after the jury found that the defendant had suffered prior felony convictions for robbery and assault with a deadly weapon, the trial court in the underlying state court proceeding determined that those convictions were serious or violent felony convictions for purposes of California's Three Strikes law, based in part upon the court's determination that the record of the prior criminal proceedings underlying the conviction for assault with a deadly weapon established that this conviction rested upon the defendant's personal use of a deadly weapon. In subsequent federal proceedings challenging the increased sentence under *Apprendi*, the federal district court in *Chamberlain* rejected the defendant's challenge, reiterating: " 'As we

understand [defendant's] position, he believes that because the fact that he personally used a dangerous weapon or caused great bodily harm was never specifically submitted to a jury and proved beyond a reasonable doubt to a jury, it could not be used to increase the penalty for his crimes. We do not agree with his interpretation of *Apprendi* . . . . [¶] By carving out an exception for proof of a prior conviction, we believe the Supreme Court [in *Apprendi*], left state courts free to undertake the analysis set forth in *Kelii to ascertain the facts underlying a prior conviction* for assault with a deadly weapon which had been submitted to a jury and previously found to be true beyond a reasonable doubt. In the case of a prior conviction which might or might not constitute a strike, such as conviction under section 245, subdivision (a)(1), *the trial court searches the underlying record* for clear evidence of the type of injury suffered by the victim or the identity of the person who wielded the dangerous or deadly weapon. If there was any dispute about these matters and the issue was not resolved by the jury, the prior offense must be deemed ambiguous and not counted as a strike. If, on the other hand, the record is clear that the offense involved personal use of a dangerous weapon or actual infliction of great bodily harm, the court is free to impose the greater sentence. As the court said in *Kelii*, this is the type of inquiry traditionally performed by judges as part of the sentencing function. . . . We do not believe the holding in *Apprendi* undercuts the foundation for the decision in *Kelii*.' " (307 F.Supp.2d at pp. 1141–1142, quoting the California Court of Appeal's decision, fns. omitted, italics added.)

In *United States v. Santiago* (2d Cir. 2001) 268 F.3d 151, the defendant pleaded guilty to the offense of possession of a firearm by a felon. (18 U.S.C. §§ 922(g), 924(e).) The federal district court found the defendant had three serious prior convictions that had occurred on separate occasions, and sentenced him pursuant to a prior conviction sentence enhancement. (*Santiago, supra*, 268 F.3d at p. 153.) On appeal, the defendant argued that only the *fact* of a prior conviction is exempted from the rule of *Apprendi* and that the issue of whether his prior convictions were committed on the same occasion must be proved to a jury beyond a reasonable doubt. (*Id.* at pp. 153–154.) In *Santiago*, the Second Circuit disagreed, observing that "[t]he determination of 'the fact of a prior conviction' implicitly entails many subsidiary findings . . . . [¶] . . . [¶] . . . [W]e read *Apprendi* as leaving to the judge, consistent with due process, the task of finding not only the mere fact of previous convictions but other related issues as well. Judges frequently must make factual determinations for sentencing, so it is hardly anomalous to require that they also determine the 'who, what, when, and where' of a prior conviction." (*Id.* at p. 156; accord, *United States v. Morris* (7th Cir. 2002) 293 F.3d 1010, 1012–1013 [no right to a jury trial on the issue of whether prior convictions were committed on a single occasion, for purposes of the armed career-criminal enhancement].)

In *United States v. Kempis-Bonola* (8th Cir. 2002) 287 F.3d 699, the federal district court determined that the defendant was not entitled to have a jury determine whether a prior conviction was an aggravated felony for purposes of enhancement under 8 United States Code section 1326, subdivision (b)(2). On appeal, the defendant argued that because the inquiry regarding the prior conviction required factfinding beyond the fact of conviction, *Apprendi* necessitated reversal of the judgment rendered against him. In rejecting the defendant's position, the Eighth Circuit explained: "The reason that there can be no reversal here based on *Apprendi* is because . . . the issue *involves* a prior conviction, and the holding of *Apprendi* expressly excepts the issue of recidivism from the rule it announced . . . . [¶] . . . [T]he sentencing-related circumstances of recidivism are facts that may be found by the sentencing judge and are not within the scope of *Apprendi*'s holding." (287 F.3d at pp. 702–703, italics added.)

## 2. *The Nature of the Inquiry Under California Law*

■ With regard to the second issue noted above—the nature of the inquiry required (and permitted) in this context under California law—we observe that the matter presented is not, as the Court of Appeal appears to have assumed, a determination or finding "about the [defendant's earlier] conduct itself, such as the intent with which a defendant acted." Instead, it is a determination regarding the nature or basis of the defendant's *prior conviction*—specifically, whether *that conviction* qualified as a conviction of a serious felony. California law specifies that in making this determination, the inquiry is a limited one and must be based upon the record of the prior criminal proceeding, with a focus on the elements of the offense of which the defendant was convicted. If the enumeration of the elements of the offense does not resolve the issue, an examination of the record of the earlier criminal proceeding is required in order to ascertain whether that record reveals whether the conviction realistically may have been based on conduct that would not constitute a serious felony under California law. (See, e.g., *People v. Woodell, supra*, 17 Cal.4th 448, 452–461.) ■ The need for such an inquiry does not contemplate that the court will make an independent determination regarding a disputed issue of fact relating to the defendant's prior conduct (see *id.* at p. 460), but instead that the court simply will examine the record of the prior proceeding to determine whether that record is sufficient to demonstrate that *the conviction* is of the type that subjects the defendant to increased punishment under California law. This is an inquiry that is quite different from the resolution of the issues submitted to a jury, and is one more typically and appropriately undertaken by a court.

As the foregoing discussion makes clear, numerous state and federal court decisions have interpreted the *Almendarez-Torres* exception more broadly

than defendant urges here, and have concluded that *Apprendi* does not preclude a court from making sentencing determinations related to a defendant's recidivism. In the present case, the trial court had before it the colloquies from the relevant Nevada proceedings, in which defendant pleaded guilty to the Nevada robbery charges. From this "factual inquiry, limited to examining court documents" (*Kelii, supra,* 21 Cal.4th 452, 457), the trial court fairly could determine whether each of the prior convictions constituted a serious prior felony conviction for purposes of the California sentencing statute. As we previously have observed, but wish to reiterate, " 'This is the type of inquiry traditionally performed by judges as part of the sentencing function.' " (*Ibid.*)

In his supplemental briefing filed in this court, defendant contends that even if *Apprendi* and its constitutional progeny leave the scope of the *Almendarez-Torres* exception unclear, the recent decision of the United States Supreme Court in *Shepard v. United States* (2005) 544 U.S. 13 [161 L.Ed.2d 205, 125 S.Ct. 1254] (*Shepard*) indicates that a jury trial is required in the present context. In *Shepard,* the high court addressed whether, under the federal Armed Career Criminal Act (ACCA) (18 U.S.C., § 924(e)), a sentencing court may look to police reports or complaint applications in determining whether a guilty plea in an earlier criminal proceeding formed the basis for a conviction of "generic" burglary, qualifying the defendant for a minimum 15-year prison sentence under the ACCA. In *Shepard,* a majority of the high court held that "a later court determining the character of an admitted burglary is generally limited to examining the statutory definition, charging document, written plea agreement, transcript of plea colloquy, and any explicit factual finding by the trial judge to which the defendant assented." (*Shepard* at p. 16 [125 S.Ct. at p. 1257].) In reaching this conclusion—and rejecting the assertion that the sentencing court properly could consider all the documents contained within the record of the prior criminal proceeding— the majority opinion in *Shepard* stated, in the course of its analysis, that "[w]hile the disputed fact here can be described as a fact about a prior conviction, it is too far removed from *the conclusive significance of a prior judicial record,* and too much like the findings subject to *Jones* [*v. United States, supra,* 526 U.S. 227 [143 L.Ed.2d 311, 119 S.Ct. 1215]] and *Apprendi,* to say that *Almendarez-Torres* clearly authorizes a judge to resolve the dispute. The rule of reading statutes to avoid serious risks of unconstitutionality, see *Jones, supra,* at 239, . . . therefore counsels us to limit the scope of judicial factfinding on the disputed generic character of a prior plea . . . ." (*Shepard, supra,* 544 U.S. at pp. 25–26 [125 S.Ct. at pp. 1262–1263], italics added;[9] see also *id.* at p. 16 [125 S.Ct. at p. 1257] ["[A] later court

---

[9] Although only four justices—Justices Stevens, Scalia, Souter, and Ginsburg—joined in part III of the opinion in *Shepard* in which the quoted passage appears, Justice Thomas's concurring opinion in *Shepard* indicates that he would go further and that he did not join in

determining the character of an admitted burglary is generally limited to examining the statutory definition, charging document, written plea agreement, transcript of plea colloquy, and any explicit factual finding by the trial judge to which the defendant assented."].)

Although the *Shepard* decision may suggest that a majority of the high court would view the legal issue presented in the case before us as presenting a serious constitutional issue, the high court's decision did not purport to resolve that issue. The issue before the high court in *Shepard* was resolved as a matter of statutory interpretation, and the court did not purport to decide whether a state is constitutionally precluded from permitting a court to conduct the kind of examination of the record of a prior criminal proceeding that occurred in the case before us in determining whether a conviction constitutes a qualifying prior conviction for purposes of enhancement under a state sentencing statute.[10] Accordingly, we believe that *Shepard* fails to establish the validity of the Court of Appeal's application of *Apprendi*.

In this regard, it is worth noting that in the several months following the *Shepard* decision, a number of federal lower courts have reaffirmed the viability of the *Almendarez-Torres* exception. (See, e.g., *United States v. Reeves* (8th Cir. 2005) 410 F.3d 1031, 1035, quoting *United States v. Marcussen* (8th Cir.2005) 403 F.3d 982, 984 ["We previously have rejected the argument that the nature of a prior conviction is to be treated differently from the fact of a prior conviction"; *Shepard* supports "the rule that the sentencing court, not a jury, must determine whether prior convictions qualify as violent felonies"]; *United States v. Williams* (7th Cir. 2005) 410 F.3d 397, 402 [trial court can make findings of fact respecting criminal history, "be they findings as to the fact of [a defendant's] prior convictions or as to the nature of those convictions," because *Shepard* "acknowledges the continuing validity of *Almendarez-Torres*"].)

In view of the foregoing circumstances, we conclude that *Shepard* does not provide the type of clear resolution of the issue that would justify overturning the relevant California precedents.

### G. *Conclusion*

As noted above, the Court of Appeal in the present case narrowly construed the *Almendarez-Torres* exception for recidivist conduct as preserved by

this part of Justice Souter's opinion only because, in Justice Thomas's view, "The factfinding procedure the court rejects gives rise to constitutional error, not doubt . . . ." (*Shepard, supra,* 544 U.S. 13, 28 [125 S.Ct. 1254, 1264] (conc. opn. of Thomas, J.).)

[10] We also observe that the high court in *Shepard* reviewed a lower court's consideration of police reports and complaint applications—documents arguably distinguishable from the sworn testimony considered by the trial court below in examining transcripts of the preliminary hearing and plea proceedings from the two Nevada matters.

*Apprendi*. In so holding, however, we believe the Court of Appeal improperly minimized the distinction between sentence enhancements that require fact-finding related to the circumstance of the current offense, such as whether a defendant acted with the intent necessary to establish a "hate crime"—a task identified by *Apprendi* as one for the *jury*—and the examination of *court records* pertaining to a defendant's *prior conviction* to determine the nature or basis of the conviction—a task to which *Apprendi* did not speak and "the type of inquiry that judges traditionally perform as part of the sentencing function." (*Kelii, supra*, 21 Cal.4th 452, 456.)

We recognize the possibility that the United States Supreme Court, in future decisions, may extend the *Apprendi* rule in the manner suggested by the Court of Appeal below. But because in our view there is a significant difference between the nature of the inquiry and the factfinding involved in the type of sentence enhancements at issue in *Apprendi* and its progeny as compared to the nature of the inquiry involved in examining the record of a prior conviction to determine whether that conviction constitutes a qualifying prior conviction for purposes of a recidivist sentencing statute, we are reluctant to assume, in advance of such a decision by the high court, that the federal constitutional right to a jury trial will be interpreted to apply in the latter context.

█ In view of our determination that defendant was not entitled to have a jury decide whether his Nevada robbery convictions qualified as strikes under California law, we do not reach the People's alternate argument that any error committed by the trial court in this regard was harmless. For the reasons discussed above, we have concluded that the trial court did not err in examining the record of the Nevada proceedings and in determining that the prior Nevada robbery convictions constituted serious felony convictions for the purpose of the relevant California sentencing provisions.

### III

Because the Court of Appeal upheld (on the basis of harmless error) the trial court's imposition of the sentencing enhancements, we affirm the judgment of the Court of Appeal.

Baxter, J., Chin, J., Moreno, J., and Corrigan, J., concurred.

**KENNARD, J.,** Dissenting.—In *Apprendi v. New Jersey* (2000) 530 U.S. 466 [147 L.Ed.2d 435, 120 S.Ct. 2348] (*Apprendi*), the United States Supreme Court held that, as a general rule, the Sixth and Fourteenth Amendments to the federal Constitution require that the existence of any fact increasing a defendant's sentence beyond the "statutory maximum" be determined by the

jury, based on proof beyond a reasonable doubt. (*Apprendi, supra*, 530 U.S. at p. 490.) The high court acknowledged there *might* be a narrow exception to this rule when the prosecution seeks to prove the "fact of a prior conviction" (*ibid.*), but the court also considered it "arguable" that its decision in *Almendarez-Torres v. United States* (1998) 523 U.S. 224 [140 L.Ed.2d 350, 118 S.Ct. 1219] (*Almendarez-Torres*), the origin of this exception, was "incorrectly decided" (*Apprendi, supra*, 530 U.S. at p. 489).

Because in *Apprendi, supra*, 530 U.S. 466, the high court itself has cast doubt on the continuing vitality of the "fact of a prior conviction" exception to the jury trial requirement, this court should construe it narrowly. Instead, the majority reads it broadly, applying it to this case even though the *Apprendi* court's justifications for the exception are inapplicable here. According to the majority, it is proper for a trial court to deny a defendant a jury trial, with a beyond-a-reasonable-doubt standard of proof, not only on the fact of a prior conviction but also on the truth or falsity of factual allegations pertaining to the conduct that gave rise to a prior conviction, even though those allegations were not elements of the prior offense. I disagree.

In my view, when the prosecution seeks to increase a defendant's sentence based on a prior conviction, the Sixth and Fourteenth Amendments to the federal Constitution entitle the defendant to a jury trial, with proof beyond a reasonable doubt, on facts pertaining to the conduct underlying the prior conviction when, as here: (1) those facts were never determined by a jury or by the court that convicted the defendant of the prior offense, (2) those facts were never admitted by the defendant, and (3) those facts, if found true, would increase the defendant's sentence beyond the statutory maximum.

Here, the trial court sentenced defendant to a term of 90 years to life in prison, based on its finding that defendant had acted with the requisite state of mind in committing two crimes of which he was convicted in Nevada many years earlier. The courts that accepted defendant's guilty pleas to the prior crimes never decided whether he acted with that mental state, because his guilt of those offenses did not turn on whether he acted with that state of mind. Defendant has never admitted that he acted with that mental state when he committed either crime. Thus, in denying defendant's request that a jury, applying a beyond-a-reasonable-doubt standard of proof, determine whether he acted with the requisite mental state when he committed the two prior offenses, the trial court here violated defendant's rights under the Sixth and Fourteenth Amendments.

# I

Defendant was charged with numerous felonies not pertinent here. It was also alleged, for purposes of sentence enhancement, that defendant had been

previously convicted in Nevada of two robberies, and that each of those convictions was for conduct constituting a "strike" under California's "Three Strikes" law. (Pen. Code, § 1170.12.)[1] The trial court bifurcated the trial on the prior convictions from the trial of the offenses charged in this case, and a jury convicted defendant of most of the charges.

Whether defendant's two prior Nevada convictions for robbery qualify as strikes under California's Three Strikes law is a difficult issue. Under our law, a prior conviction is a strike if the conviction is for a "serious felony" as defined in subdivision (c) of section 1192.7. Robbery is listed in that provision. Nevada's robbery statute, however, differs from California law in at least two respects: (1) The Nevada statute requires only that the defendant act with general criminal intent, whereas in California the defendant must act with the specific intent to permanently deprive the victim of the property taken. (2) Under Nevada law, robbery is committed if property is taken by placing the victim in fear of either *present or future* harm to a person in the victim's company (Nev. Rev. Stat., § 200.380); by contrast, although in California taking property by placing the victim in fear of *immediate* harm to a companion is robbery, taking property by placing the victim of fear of *future* harm to the companion is not robbery (§§ 211, 212) but extortion (§§ 518, 519), which is generally not a strike (see §§ 1192.7, 667.5, subd. (c)).[2] Therefore, in Nevada a robbery conviction can be based on conduct that under California law would not be robbery, and thus would not qualify as a serious felony strike.

When, as here, the elements of the crime underlying a defendant's out-of-state prior conviction do not make that offense a strike under California law, the conviction is nevertheless a strike if the *conduct* that gave rise to it would be a serious felony, and thus a strike, under California law. (*People v. Avery* (2002) 27 Cal.4th 49, 53 [115 Cal.Rptr.2d 403, 38 P.3d 1]; *People v. Woodell* (1998) 17 Cal.4th 448, 453 [71 Cal.Rptr.2d 241, 950 P.2d 85].) But in that situation, the prosecution may not call witnesses to establish the defendant's prior conduct; rather, it can rely only on conduct shown in the record of the proceedings pertaining to the prior conviction. (*Woodell, supra,* at p. 453.) The purpose of that limitation is to "bar[] the prosecution from relitigating the circumstances of a crime committed years ago . . . thereby threatening the defendant with harm akin to double jeopardy and denial of speedy trial." (*People v. Guerrero* (1988) 44 Cal.3d 343, 355 [243 Cal.Rptr.

---

[1] Unless otherwise stated, all statutory references are to the Penal Code.

[2] Defendant contends that the California and Nevada statutes also differ in that in California, unlike Nevada, taking property by means of fear of future harm to the *victim* (as opposed to a companion) is extortion, not robbery. The Attorney General, however, argues that such an act would be robbery in California as well as in Nevada. I agree with the majority and the Court of Appeal that the dispute need not be resolved here.

688, 748 P.2d 1150]; see also *People v. Reed* (1996) 13 Cal.4th 217, 223 [52 Cal.Rptr.2d 106, 914 P.2d 184].)

Defendant here denied that the conduct underlying his two Nevada convictions for robbery would qualify as serious felonies under California law, and he asked for a jury trial on the issue. The trial court denied the request. After examining the preliminary hearing transcripts of defendant's Nevada convictions, the trial court found that the conduct underlying those prior robbery convictions satisfied the elements of robbery under California law. The only issue the trial court submitted to a jury was whether the records of defendant's prior convictions were authentic; the jury so determined. The trial court sentenced defendant under the Three Strikes law to a prison term of 90 years to life. Defendant appealed.

The Court of Appeal held that the trial court violated defendant's right to a jury trial, with proof beyond a reasonable doubt, when it denied his request to have a jury determine whether his prior Nevada robberies constituted "serious felonies" under California law. But the Court of Appeal nevertheless affirmed the judgment, based on its conclusion that the trial court's error did not prejudice defendant. This court granted review.

## II

Two decisions of the high court are pertinent here: *Almendarez-Torres, supra,* 523 U.S. 224, and *Apprendi, supra,* 530 U.S. 466.

In *Almendarez-Torres,* the defendant pled guilty to illegally returning to the United States after having been deported. The maximum sentence under federal law for that crime was two years unless the previous deportation resulted from a conviction for an aggravated felony, in which case the maximum sentence became 20 years. The trial court sentenced the defendant to seven years and one month in prison based on its finding that he had been deported for three aggravated felonies. The high court upheld that determination, rejecting the defendant's contention that the federal Constitution gave him the right to a jury trial, with proof beyond a reasonable doubt, on the question of whether he had been convicted of an aggravated felony. (*Almendarez-Torres, supra,* 523 U.S. at pp. 239–247.)

Some two years later, the high court decided *Apprendi, supra,* 530 U.S. 466. In that case, the defendant pled guilty to an offense that ordinarily carried a maximum penalty of 10 years in prison, but New Jersey law permitted imposition of a greater prison term if the trial court found by a preponderance of the evidence that the defendant committed the crime because of racial bias. The trial court so found, and it imposed a prison term of 12 years.

The parties' plea bargain had preserved the defendant's right to challenge the constitutionality of the New Jersey law that allowed the trial court to decide the truth of the racial bias allegation under a preponderance of the evidence standard. The United States Supreme Court held that the law was unconstitutional, and that the defendant was entitled to a jury trial, with a beyond-a-reasonable-doubt standard of proof, on the question of whether his commission of the crime was because of racial bias. As to whether this holding was consistent with its then recent decision in *Almendarez-Torres, supra,* 523 U.S. 224, the high court observed it was "arguable that *Almendarez-Torres* was incorrectly decided." (*Apprendi, supra,* 530 U.S. at p. 489.) The court concluded, however, that it need not decide whether to overrule its decision in *Almendarez-Torres* because it was distinguishable in three respects: (1) The defendant in *Almendarez-Torres* "had *admitted* the three earlier convictions for aggravated felonies" (*Apprendi, supra,* 530 U.S. at p. 488); (2) those admissions "had been entered pursuant to proceedings with substantial procedural safeguards" (*ibid.*) which included the right to a jury trial and proof beyond a reasonable doubt on contested issues of fact; and (3) at issue in *Almendarez-Torres* was the defendant's recidivism, " 'a traditional, if not the most traditional, basis for a sentencing court's increasing an offender's sentence' " (*ibid.*). The high court in *Apprendi* went on to say that "[o]ther than the *fact of a prior conviction,* any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." (*Apprendi, supra,* 530 U.S. at p. 490, italics added.)[3] At issue here is whether, under that "fact of a prior conviction" exception, it was proper for the trial court rather than a jury to determine not merely the *existence* of defendant's two prior Nevada convictions for robbery, but also *facts pertaining to the conduct that gave rise to the prior convictions.*

To resolve that issue I look to the first and second of the three reasons for the exception to the jury trial right that the high court carved out in *Apprendi*: (1) whether the defendant admitted the prior convictions, and (2) whether those admissions occurred with "substantial procedural safeguards" (*Apprendi, supra,* 530 U.S. at p. 488). I do not consider the third reason, that recidivism " 'is a traditional . . . basis for a sentencing court's increasing an offender's

---

[3] In *Apprendi,* the United States Supreme Court said that a defendant's right to jury trial, with proof beyond a reasonable doubt, on facts that increase the sentence beyond the statutory maximum is based on the due process clause of the Fourteenth Amendment. (*Apprendi, supra,* 530 U.S. at p. 469.) But more recent decisions by the high court say that *Apprendi* is based on the Sixth Amendment's right to jury trial, and do not mention the Fourteenth Amendment. (*United States v. Booker* (2005) 543 U.S. 220, 232 [160 L.Ed.2d 621, 125 S.Ct. 738]; *Blakely v. Washington* (2004) 542 U.S. 296, 298, 305, 308–312 [159 L.Ed.2d 403, 124 S.Ct. 2531].) In my view, *Apprendi* is best viewed as being based on both amendments: Its requirement of a jury trial originates in the Sixth Amendment, and its requirement of proof beyond a reasonable doubt is mandated by the due process clause of the Fourteenth Amendment.

sentence' " (*ibid.*), because the United States Supreme Court recently abandoned that ground. In *United States v. Booker, supra*, 543 U.S. 220, in which the high court applied its holding in *Apprendi* to the federal sentencing guidelines, the court said that traditional judicial authority "does not provide a sound guide to enforcement of the Sixth Amendment's guarantee of a jury trial in today's world." (*Id.* at p. 236.)

Here, defendant never admitted the factual allegations pertaining to the *conduct* underlying his prior Nevada convictions that are now being used in California to increase his sentence. (He never admitted that he committed the two robberies in Nevada with the intent to permanently deprive the victims of their property, and that he placed the victims or persons in the victims' company in fear of immediate injury.) The trial courts that accepted defendant's guilty pleas to the two robbery offenses never determined the truth of those factual allegations, and they did not provide defendant with any procedural safeguards pertaining to those allegations, because his guilt of the Nevada offenses did not turn on the truth or falsity of those allegations. The trial court in this case, based on its determination that the factual allegations relating to the prior robbery convictions were true, imposed a sentence beyond the statutory maximum. Thus, by denying defendant a jury trial on the truth of those factual allegations, the trial court violated defendant's Sixth and Fourteenth Amendment rights to a jury trial.

The majority here insists that "the nature of the inquiry required . . . under California law . . . is not . . . a determination or finding 'about the [defendant's earlier] conduct itself.' " (Maj. opn., *ante*, at p. 706.) "Instead," the majority says, "it is a determination regarding the *nature or basis* of the defendant's prior conviction—specifically, whether that conviction qualified as a conviction of a serious felony." (*Ibid.*, italics added and omitted.) Thus, the majority concludes that the Court of Appeal was wrong when it held that the trial court made a factual determination pertaining to the conduct underlying defendant's two prior convictions for robbery in Nevada.

I disagree. The only way to determine the "nature or basis" of a defendant's prior conviction is to determine the conduct that gave rise to that conviction. Indeed, the majority recognizes this elsewhere in its opinion, when it explains that a trial court, to decide whether an out-of-state prior conviction is a strike, must determine "whether the conviction realistically may have been based on *conduct* that would not constitute a felony under California law." (Maj. opn., *ante*, at p. 706, italics added.) Moreover, as this court explained nearly 20 years ago, California's law imposing increased penalties for prior convictions "refers to *conduct*, not a specific *crime*." (*People v. Guerrero, supra*, 44 Cal.3d at p. 355.) This court has repeatedly explained that in determining the truth of an alleged prior conviction when, as

here, the necessary elements of that conviction do not establish that it is a serious felony, and thus subject to California's Three Strikes law, the trier of fact must decide whether the defendant's conduct, as demonstrated in the record of the prior conviction, shows that the crime was a serious felony. (See, e.g., *People v. Avery, supra*, 27 Cal.4th at p. 53 ["To qualify as a serious felony, a conviction from another jurisdiction must involve conduct that would qualify as a serious felony in California"]; *People v. Kelii* (1999) 21 Cal.4th 452, 457 [87 Cal.Rptr.2d 674, 981 P.2d 518] [describing the determination as a "factual inquiry"]; *People v. Woodell, supra*, 17 Cal.4th at p. 453 [trier of fact must determine " 'whether the offense . . . involved conduct which satisfies all of the elements of the comparable California serious felony offense' "].)

True, there is an unusual limitation on the *type of evidence* that the prosecution may use to prove the conduct underlying a defendant's prior conviction: It may rely only on matters appearing in the record of the prior conviction. This limitation appears to be the basis for the majority's conclusion here that the trial court determined the "nature or basis" of defendant's two prior convictions rather than the conduct underlying those convictions. (Maj. opn., *ante*, at p. 706.) As I have explained earlier, the purpose of this limitation is to *protect* defendants from "harm akin to double jeopardy and denial of speedy trial." (*People v. Guerrero, supra*, 44 Cal.3d at p. 355.) It is ironic indeed that the majority uses a rule designed to protect the accused from one type of unfairness as the basis for subjecting the accused to a far greater unfairness: denial of the right to a jury trial, with proof beyond a reasonable doubt, on the truth or falsity of factual allegations that determine whether the accused can be sentenced to a term of life imprisonment under California's Three Strikes law.

## III

Having concluded above that the trial court violated defendant's constitutional right to a jury trial on the facts underlying his two prior convictions, the remaining question is whether this error requires reversal of the judgment.

The Court of Appeal held that the error was harmless. Applying the test for "non-structural" constitutional error the high court articulated in *Chapman v. California* (1967) 386 U.S. 18 [17 L.Ed.2d 705, 87 S.Ct. 824], the Court of Appeal concluded that, beyond a reasonable doubt, the sentence enhancement allegations would have been found true had the issue been submitted to a jury with a beyond-a-reasonable-doubt standard of proof. It is unclear, however, whether that is the applicable test. Pending before the United States Supreme Court is *Washington v. Recuenco* (2005) 546 U.S. 960 [163 L.Ed.2d 362, 126 S.Ct. 478], which will decide whether *Apprendi* error

is a "structural" error and thus reversible *per se*, or whether *Chapman*'s harmless-beyond-a-reasonable-doubt standard applies. The high court has already heard argument in *Recuenco*, and it will decide the case before the court's current term ends in July 2006, which is just a few weeks away. Given that circumstance, I would vacate submission of this matter pending the outcome of *Recuenco*. Once the high court has decided *Recuenco*, I would then recalendar this case for oral argument and decide the question of prejudice by applying whatever harmless error standard the high court adopts in *Recuenco*.

Werdegar, J., concurred.